UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
(Eastern Division)

| | |
|---|---|
| ANTHONY EALOM and MIGUEL FERNANDEZ, for themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOLDCOAST CARRIERS INC., and DMG CONSULTING & DEVELOPMENT INC., <br><br> Defendants. | Case No. _____ <br><br> **Jury demanded.** |

## CLASS ACTION COMPLAINT

### I. Introduction.

1. Plaintiffs Anthony Ealom and Miguel Fernandez bring this class action lawsuit against Defendants GoldCoast Carriers Inc. ("GoldCoast") and DMG Consulting & Development Inc. ("DMG") (together, "Defendants") for themselves and all others similarly situated asserting federal and state law wage violations. As set forth herein, Defendants provide over-the-road freight transportation services. Plaintiffs are truck drivers who performed those freight transportation services. As set forth herein, Plaintiffs allege that Defendants misclassified them and a substantial number of the truck drivers in their service as independent contractors when they should have been classified as employees. In addition, Plaintiffs allege that Defendants have taken unlawful deductions from their drivers' compensation. Plaintiffs seek the following relief: certification of this action as a class and collective action pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216; appointment as class and collective

1

representatives and their undersigned counsel as class counsel; restitution of all improper deductions taken from their compensation and the compensation of the proposed class members; liquidated damages and penalties; pre-judgment and post-judgment interest; attorneys' fees and costs; and such other relief as the Court may allow.

## II.     The Parties.

2.      Anthony Ealom is an adult individual and citizen of the State of Ohio. He provided commercial truck driving services for Defendants from about November 2022 to about July 2023.

3.      Miguel Fernandez is an adult individual and citizen of the State of Florida. He provided commercial truck driving services for Defendants from about October 2023 to about December 2023.

4.      With respect to his FLSA claim, Mr. Ealom seeks to represent the following proposed collective pursuant to 29 U.S.C. § 216(b):

> All individuals who have performed commercial truck driving services for Defendants, and who have not received the full federal minimum wage for all hours worked in any pay period during the relevant three-year statutory period, and who elect to "opt into" this action.

5.      With respect to their Illinois wage law claims, Mr. Ealom and Mr. Fernandez seek to represent the following proposed class pursuant to Federal Rule of Civil Procedure 23:

> All individuals who have performed commercial truck driving services for Defendants, and whom Defendants have classified as independent contractors, at any time during the ten-year period preceding the filing of this Complaint.

6.      GoldCoast Carriers Inc. is a domestic corporation organized under the laws of the State of Illinois that maintains its principal offices in Park Ridge, Illinois.

7.      DMG Consulting & Development Inc. is a domestic corporation organized the laws of the State of Illinois that maintains its principal offices in Elgin, Illinois.

### III. Jurisdiction and Venue.

8. This Court has original subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because this case arises under the laws of the United States. Specifically, this action arises under 29 U.S.C. § 201, *et seq.*

9. This Court has supplemental jurisdiction over the state law claims asserted in this action pursuant to 28 U.S.C. § 1367(a) because the Court has original jurisdiction over the FLSA claim asserted herein under 29 U.S.C. § 201, *et seq.* and because Plaintiffs' state law claims are so related to that claim that they form part of the same case or controversy.

10. This Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(a) because Defendants are subject to the jurisdiction of a court of general jurisdiction in the State of Illinois.

11. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) because Defendants both maintain principal offices in the Northern District of Illinois (i.e., in Cook County).

### III. Statement of Facts.

**A.  Defendants' business structure and operations.**

12. GoldCoast is a commercial trucking company with authority from the United States Department of Transportation's Federal Motor Carrier Safety Administration ("FMCSA") to transport freight interstate.

13. DMG is a "supply chain management" company that operates under the trade name "GoldCoast Logistics Group" and which provides commercial brokerage[1] and warehousing services to customers.

14. Defendants maintain depots, terminals, and offices in Illinois, Arizona, and Florida, including a 61,800 square-foot facility and "headquarters" that Defendants had constructed in 2021-2022 in Elgin, Illinois.

15. Plaintiffs performed work for Defendants in Illinois. They participated in Defendants' orientation for new drivers in Illinois; picked up and dropped off loads in Illinois; and were required to travel to Illinois to get their trucks serviced at Defendants' facility.

16. For example, on June 12, 2023, Defendants dispatched Mr. Ealom to pick up a load in Burgettstown, Pennsylvania, which he delivered to a customer in Aurora, Illinois on June 13, 2023.

17. Similarly, on June 14, 2023, Defendants dispatched Mr. Ealom with an empty truck from Elgin, Illinois, to pick up a load in Rochelle, Illinois, which he then delivered to Columbus, Ohio, on June 15, 2023.

18. Defendants are privately owned by the same individual, Dragos Sprinceana; use the same facilities; utilize the same employees; are subject to common management; and advertise under the same trade name.

**B.    Defendants' use and classification of truck drivers.**

---

[1] In other words, DMG acts as an intermediary between shippers and motor carriers to arrange transportation of good, cargo, and freight on the shippers' behalf.

19. Defendants have retained numerous truck drivers to provide over-the-road freight transportation services throughout the time period relevant to this action. For example, according to its filings with the FMCSA, GoldCoast employed 330 drivers in 2023-2024.

20. Defendants are "employers" under the FLSA, 29 U.S.C. § 203(d), and the IWPCA, 820 ILCS 115/2, because they act directly and indirectly in the interest of an employer in relation to the commercial truck drivers of whose services they make use, and gainfully employ one or more persons in a calendar year.

21. Notwithstanding their employer status, Defendants classify their truck drivers – including both Plaintiffs – as independent contractors. That classification is improper because Defendants' drivers do not legally qualify as independent contractors.

22. Defendants maintain the right to control and direct – and do, in fact, control and direct – the terms and details of the drivers' work. For example, among other things, Defendants:

    a. directly employ recruiters, trainers, managers, and dispatchers who are responsible for hiring, training, directing, supervising, and disciplining the drivers;

    b. require new drivers to participate in an orientation before allowing them to work;

    c. require new drivers to undergo a one-month "probation" period;

    d. prohibit drivers from cancelling "loads"[2] after booking the load with their dispatchers;

    e. own trucks and trailers which they "rent" to drivers who do not own their own equipment;

---

[2] A "load" is a term commonly used in the trucking industry to refer to a freight or cargo shipment.

  f. require drivers to pay a "security deposit," at times called an "escrow," of about $2,500, which drivers "fund" through payroll deductions;

  g. set the drivers' rate and manner of compensation, as well as the time periods for drivers' payments;

  h. require drivers to download and use certain fleet and paperwork management smartphone applications, such as Samsara and Logix;

  i. require drivers to be available for dispatch at least a certain number of weeks per month;

  j. require drivers to submit paperwork for the loads they transport in specific "trip back" envelopes on a weekly basis (every Thursday);

  k. maintain unilateral discretion to offer or refuse loads to drivers;

  l. require that drivers pay for certain types of damage to Defendants' vehicles, such as tire replacements;

  m. threaten to impose – and do actually impose – monetary charges or "fines" for alleged policy infractions; and

  n. reserve the right to terminate drivers for policy violations, such as "pulling" unauthorized or unreported loads.

23. Defendants' investment in their business far outstrips the drivers' "investment" in their "business," both in terms of sheer dollar value and in terms of the type of investments made by drivers as compared to Defendants.

24. The drivers' "investment" in their "business" is generally limited to the costs associated with renting and using their trucks, plus the operating "expenses" that Defendants "pass on" to them (e.g., for insurance, "washouts," and "escort fees").

25. By comparison, Defendants' investment in their business is monumental, including ownership of more than 300 trucks and facilities in three states (including a 61,800 square foot facility in Illinois), and employment of numerous administrative personnel.

26. The drivers have little opportunity to realize meaningful profits and losses. Their ability to make money (and any losses they incur) are not based on their "managerial skill," but are instead directly correlated to the assignments Defendants are willing to provide them.

27. The drivers' relationship with Defendants is at best impermanent. Plaintiffs, for example, each worked for Defendants for less than a year. On information and belief, that duration is consistent with the duration of other drivers' relationship with Defendants.

28. Defendants' drivers are an integral part of their business because without commercial truck drivers, Defendants would be unable to provide over-the-road freight transportation services for their clients.

29. Defendants' drivers are largely economically dependent upon Defendants. Like Plaintiffs, most personally perform their driving services, which both limits their ability to obtain work elsewhere and means they are generally reliant on Defendants for paid work.

30. Furthermore, Defendants collect thousands of dollars from drivers in "escrow funds," which Defendants only return if certain conditions are met. Drivers are therefore incentivized to keep working for Defendants in order to have their escrow fund returned.

31. Defendants' drivers perform work within Defendants' usual course of business; that is, Defendants provide a service (over-the-road freight transportation) which they could not do without the truck drivers who perform the work associated with that service.

32. Defendants' truck drivers perform their work within Defendants' usual places of business, namely, the commercial motor vehicles and equipment that Defendants' own and maintain, and which they "rent" to the drivers.

33. Defendants' truck drivers do not work in a genuinely independent trade, occupation, profession, or business as commercial truck drivers because, *inter alia*, Defendants:

    a. recruit individuals with little experience as drivers, whom Defendants "hold out" to clients as "their" drivers;

    b. mark the tractors and trailers used by the drivers with Defendants' name, logo, and motor carrier identification numbers; and

    c. maintain exclusive access to their customers and clients, the revenue from whom Defendants use to pay the drivers.

**C.   Defendants' pay practices.**

34. Defendants pay drivers either a percentage of the gross amount charged to customers or a contracted rate per "loaded" mile, usually in the range of 65 cents; Plaintiffs, for example, were both paid 65 cents per loaded mile.

35. The drivers' trip assignments and compensation are documented in weekly pay statements called "settlement statements," which also reflect the deductions or "chargebacks" taken by Defendants from the drivers' pay.

36. GoldCoast and DMG both issue settlement statements to drivers. For example, Mr. Ealom's settlement statements were issued by "GoldCoast Logistics," the trade name used by DMG. Mr. Fernandez's settlement statements were issued by "GoldCoast Carriers." (*See* Sample Settlement Statements, attached as **Exhibit 1**).

37. Defendants take deductions from the drivers' compensation each pay period for a variety of items, including, *inter alia*: tractor and trailer rental; security deposit; occupational accident insurance; deposits for an electronic logging device ("ELD") that Defendants require drivers to use; a "driver legal plan"; washouts; and "escort fees."

38. As reflected in their settlement statements, Defendants took deductions from Plaintiffs' compensation for security deposits; ELD deposits; occupational accident insurance; and "driver legal plan," among other things. (*See* Sample Settlement Statements [**Ex. 1**]).

39. In addition, and as previously alleged, Defendants take thousands of dollars from drivers' compensation for an "escrow fund." Defendants collected $2,500 from Mr. Ealom for an escrow fund, for example, and at least $750 from Mr. Fernandez for the same.

40. Defendants did not return any of the escrow funds it collected from Mr. Ealom and Mr. Fernandez following the termination of their services.

41. The deductions taken by Defendants for the items identified above are not required by state or federal law, nor are they for the benefit of the drivers. Moreover, Defendants did not receive proper written authorization from the drivers in order to take these deductions.

42. The deductions taken by Defendants have at times resulted in drivers receiving less than the FLSA minimum wage for all hours worked because those deductions have reduced the drivers' compensation to less than $7.25 per hour when divided by their hours worked.

43. For example, during the week of June 20, 2023, Mr. Ealom drove three loads for Defendants and earned total net compensation of -$2,202.08 (i.e., gross compensation of $1,890 less $4,192.98 in deductions taken by Defendants).

9

44. Thus, despite working many hours over several days between June 20 and June 26, 2023, Mr. Ealom ultimately received no compensation for the work he performed for Defendants during that pay period.

### IV. Class and Collective Allegations.

**A. The FLSA Collective.**

45. With respect to his claim under the FLSA, Mr. Ealom brings this action on a collective basis pursuant to 29 U.S.C. § 216(b). He seeks to represent the following collective (the "FLSA Collective") as to that claim:

> All individuals who have performed commercial truck driving services for Defendants, and who have not received the full federal minimum wage for all hours worked in any pay period during the relevant three-year statutory period, and who elect to "opt into" this action.

46. The FLSA Collective meets the requirements for certification under 29 U.S.C. § 216(b) because the members of that collective performed the same job duties, for the same Defendants, subject to the same policies concerning compensation. Accordingly, the members of the proposed collective are similarly situated with respect to their relationship with Defendants.

47. Mr. Ealom has filed his written consent-to-sue form with this Complaint as **Exhibit 2**.

**B. The Rule 23 Class.**

48. With respect to their claims under the IWPCA, Plaintiffs bring this action on a class basis pursuant to Federal Rule of Civil Procedure 23. They seek to represent the following class (the "Illinois Wage Class") as to those claims:

> All individuals who have performed commercial truck driving services for Defendants, and whom Defendants have classified as independent contractors, at any time during the ten-year period preceding the filing of this Complaint.

49. The Illinois Wage Class meets all the prerequisites and requirements for certification under Rule 23.

50. Membership in the Illinois Wage Class may be ascertained using criteria and by using Defendants' own records, which would identify the individuals who would qualify as members of the class.

51. The Illinois Wage Class is too numerous for practicable joinder due to the size, composition, and geographic dispersion of those proposed classes.

52. Plaintiffs do not know the exact size of the class since that information is within the control of Defendants; however, on information and belief, the size of each proposed class is estimated to be no fewer than 100 individuals.

53. There are questions of law and fact common to each class that predominate over any individual issues that might exist. Common questions of law and fact include, *inter alia*, whether Defendants have misclassified their drivers as independent contractors; failed to pay their drivers at least the federal minimum wage for all hours worked; and taken improper, unauthorized deductions from their drivers' agreed-upon compensation.

54. The claims asserted by Plaintiffs are typical of the claims of proposed class members because they performed the same work, subject to the same challenged practices, as the proposed class members they seek to represent.

55. Plaintiffs and their counsel will fairly and adequately protect and represent the interests of the classes. Plaintiffs have no conflict of interest with the proposed class members because their success in this matter will translate into success for the class generally. Plaintiffs also retained the undersigned counsel, who are highly experienced in class litigation concerning truck drivers' wage rights.

56. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The alternative – numerous lawsuits alleging similar or identical causes of action – would not serve judicial economy, while the prosecution of separate actions by the individual class members would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendants. Moreover, some proposed class members – particularly current drivers – may be reluctant to bring their claims individually for fear of retaliation.

57. Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the IWPCA to workers and to truck drivers, whose individual claims may be too small to warrant the time, commitment, and expense of litigation.

58. The proposed classes will not be difficult to manage due to the uniformity of claims among the class members, the amenability of wage cases to class litigation, and the use of representative testimony and representative documentary evidence that will be similar or identical among the members of the proposed classes.

## COUNT I
**Fair Labor Standards Act**
**29 U.S.C. § 201, *et seq.***

59. On behalf of himself and the proposed collective defined herein, Plaintiff Anthony Ealom realleges and incorporates here by reference all previous paragraphs in this Complaint.

60. Defendants have violated the minimum wage provision of the FLSA, 29 U.S.C. § 206, by failing to pay the proposed collective action members, including Mr. Ealom, at least $7.25 per hour for all hours worked.

## COUNT II
## Illinois Wage Payment and Collection Act
## 820 Ill. Comp. Stat. §§ 115/9 & 115/9.5

61. On behalf of themselves and the proposed class defined herein, Plaintiffs Anthony Ealom and Miguel Fernandez reallege and incorporate here by reference all previous paragraphs in this Complaint.

62. The IWPCA, 820 Ill. Comp. Stat. 115/9 and 56 Ill. Admin. Code § 300.870-890, prohibits employers from making unauthorized deductions from employees' wages, deducting a deposit from employees' final compensation, and/or failing to return deposits when the employer's property is returned.

63. Defendants have violated the IWPCA, 820 Ill. Comp. Stat. § 115/9 and 56 Ill. Admin. Code § 300.870-890 by making unlawful, unauthorized deductions from Plaintiffs' and the putative class members' wages and deducting and/or failing to return escrow deposits.

64. Defendants have violated the IWPCA, 820 Ill. Comp. Stat. 115/9.5 by failing to reimburse Plaintiffs and the proposed class members for necessary expenditures and losses required of drivers in the discharge of their employment duties that inure primarily to the benefit of Defendants.

## JURY DEMAND

65. Plaintiffs hereby demand a trial by jury on all claims.

## PRAYER FOR RELIEF

66. Plaintiff respectfully requests that the Court grant the following relief:

   a. Certification of the proposed collective and class;

      b.      Appointment of Plaintiffs and the undersigned counsel as representatives of the certified collective and class;

      c.      Restitution of all unpaid minimum wages owed under the FLSA;

      d.      Restitution of all improper deductions and expenses incurred under the IWPCA;

      e.      Liquidated damages and penalties as provided for in 29 U.S.C. § 216(b), 820 Ill. Comp. Stat. § 105/12(a), and 820 Ill. Comp. Stat. § 115/14(a);

      f.      Pre- and post-judgment interest;

      g.      Reasonable attorneys' fees and costs; and

      h.      Any such other relief as this Court deems proper.

Respectfully submitted,

ANTHONY EALOM and MIGUEL FERNANDEZ, individually and on behalf all others similarly situated,

By their attorneys,

/s/ Martin Stainthorp
John Kunze
Martin Stainthorp
Workplace Law Partners, P.C.
111 E. Wacker Drive, Suite 2300
Chicago, IL 60601
Tel: (312) 861-1800
jkunze@fishlawfirm.com
mstainthorp@fishlawfirm.com

/s/ Brant Casavant
Hillary Schwab
  *Pro hac vice* application forthcoming
Brant Casavant
  *Pro hac vice* application forthcoming
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel: (617) 607-3260
Fax: (617) 488-2261
hillary@fairworklaw.com
brant@fairworklaw.com

Dated: June 21, 2024