**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**(Eastern Division)**

| | |
|---|---|
| ANTHONY EALOM, DEXTER BLANDIN, JOHN ELMS, MIGUEL FERNANDEZ, and JIMMY VANEGAS, <br><br> Plaintiffs, <br><br> v. <br><br> GOLDCOAST CARRIERS INC., DMG CONSULTING & DEVELOPMENT INC., and DRAGOS SPRINCEANA, <br><br> Defendants. | Case No. 1:24-cv-05217 <br><br> **Jury demanded.** <br><br> Filed pursuant to Fed. R. Civ. P. 15(a); leave to file granted June 16, 2025. |

## FIRST AMENDED COMPLAINT

### I.      Introduction.

1.      Plaintiffs Anthony Ealom, Dexter Blandin, John Elms, Miguel Fernandez, and Jimmy Vanegas ("Plaintiffs") bring this action against Defendants GoldCoast Carriers Inc. ("GoldCoast"), DMG Consulting & Development Inc. ("DMG"), and Dragos Sprinceana ("Sprinceana") (collectively, "Defendants") asserting federal and state law wage violations. As set forth herein, Defendants are a joint enterprise that have provided over-the-road freight transportation services throughout the United States. Plaintiffs are truck drivers who performed those freight transportation services. They allege that Defendants misclassified them as independent contractors when they should have been classified as employees. In addition, Plaintiffs allege that Defendants have taken unlawful deductions from their compensation. Plaintiffs seek the following relief: restitution for all earned, unpaid compensation owed; restitution for the improper deductions taken from their compensation; liquidated damages and

1

penalties; pre-judgment and post-judgment interest; attorneys' fees and costs; and such other relief as the Court may allow.

## II.     The Parties.

2.     Anthony Ealom is an adult individual and citizen of the State of Ohio. He provided commercial truck driving services for Defendants from about November 2022 to about July 2023.

3.     Dexter Blandin is an adult individual and a citizen of the State of Florida. He provided commercial truck driving services for Defendants from about September 2024 to about November 2024.

4.     John Elms is an adult individual and a citizen of the State of Ohio. He provided commercial truck driving services for Defendants from about February 2024 to about May 2024.

5.     Miguel Fernandez is an adult individual and citizen of the State of Florida. He provided commercial truck driving services for Defendants from about October 2023 to about December 2023.

6.     Jimmy Vanegas is an adult individual and a citizen of the State of Florida. He provided commercial truck driving services for Defendants from about March 2024 to about July 2024.

7.     GoldCoast Carriers Inc. is a domestic corporation organized under the laws of the State of Illinois that maintains its principal offices in Park Ridge, Illinois.

8.     DMG Consulting & Development Inc., is a domestic corporation organized under the laws of the State of Illinois that maintains its principal offices in Elgin, Illinois.

9.     Dragos Sprinceana is an adult individual, a citizen of Romania, and a resident of the State of Florida.

### III.     Jurisdiction and Venue.

10.     This Court has original subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because this case arises under the laws of the United States. Specifically, this action arises under 29 U.S.C. § 201, *et seq.*

11.     This Court has supplemental jurisdiction over the state law claims asserted in this action pursuant to 28 U.S.C. § 1367(a) because the Court has original jurisdiction over the FLSA claim asserted herein under 29 U.S.C. § 201, *et seq.* and because Plaintiffs' state law claims are so related to that claim that they form part of the same case or controversy.

12.     This Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(a) because Defendants are subject to the jurisdiction of a court of general jurisdiction in the State of Illinois.

13.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) because GoldCoast and DMG maintain their principal offices in the Northern District of Illinois (i.e., in Cook County).

### III.     Statement of Facts.

**A.     Defendants' business structure and operations.**

14.     GoldCoast is a commercial trucking company with authority from the United States Department of Transportation's Federal Motor Carrier Safety Administration ("FMCSA") to transport freight interstate.

15. DMG is a "supply chain management" company that operates under the trade name "GoldCoast Logistics Group" and which provides commercial brokerage[1] and warehousing services to customers.

16. Sprinceana is the owner of GoldCoast and DMG. In addition, he is the sole president, secretary, and director of DMG. Sprinceana maintains extensive operational control over GoldCoast and DMG in his role as the owner of those companies.

17. Sprinceana has knowingly and intentionally permitted the employee misclassification and wage payment violations set forth herein and has systematically attempted to evade service in several lawsuits brought by former drivers challenging those practices.

18. Defendants maintain depots, terminals, and offices in Illinois, Arizona, and Florida, including a 61,800 square-foot facility and "headquarters" that Defendants constructed in 2021-2022 in Elgin, Illinois.

19. Plaintiffs performed work for Defendants in Illinois. They participated in Defendants' orientation for new drivers in Illinois; picked up and dropped off loads in Illinois; and were required to travel to Illinois to get their truck serviced at Defendants' facility.

20. For example:

a. on June 12, 2023, Defendants dispatched Mr. Ealom to pick up a load in Burgettstown, Pennsylvania, which he delivered to a customer in Aurora, Illinois on June 13, 2023;

---

[1] In other words, DMG acts as an intermediary between shippers and motor carriers to arrange transportation of good, cargo, and freight on the shippers' behalf.

b. on June 14, 2023, Defendants dispatched Mr. Ealom with an empty truck from Elgin, Illinois, to pick up a load in Rochelle, Illinois, which he then delivered to Columbus, Ohio, on June 15, 2023;

c. on or about February 21, 2024, Defendants dispatched Mr. Elms to Defendants' facility in Elgin, Illinois, to pick up a new truck;

d. on March 8, 2024, Defendants dispatched Mr. Elms to Manitowoc, Wisconsin, from Elgin, Illinois, to deliver a load;

e. on March 27, 2024, Defendants dispatched Mr. Vanegas from Elgin, Illinois to Franklin Park, Illinois, to pick up a load and transport it to Allen Park, Missouri;

f. on June 21, 2024, Defendants dispatched Mr. Vanegas to pick up and transport a load from Jeffersonville, Indiana, to Chicago, Illinois; and

g. on October 9, 2024, Defendants dispatched Mr. Blandin from Princeton, Illinois, to East Moline, Illinois, to pick up and transport a load to Swedesboro, New Jersey.

21. GoldCoast and DMG are a joint enterprise because they are privately owned by the same individual (Sprinceana); use the same facilities; utilize the same employees; are subject to common management; and advertise under the same trade name.

**B. Defendants' use and classification of truck drivers.**

22. Defendants have retained numerous truck drivers to provide over-the-road freight transportation services throughout the time period relevant to this action. For example, according to its filings with the FMCSA, GoldCoast employed 330 drivers in 2023-2024.

23.     Defendants are "employers" under the FLSA, 29 U.S.C. § 203(d), and the IWPCA, 820 ILCS 115/2, because they act directly and indirectly in the interest of an employer in relation to the commercial truck drivers of whose services they make use and gainfully employ one or more persons in a calendar year.

24.     Notwithstanding their employer status, Defendants have classified their truck drivers – including Plaintiffs – as independent contractors. That classification is improper because Defendants' drivers do not legally qualify as independent contractors.

25.     Defendants maintain the right to control and direct – and do, in fact, control and direct – the terms and details of the drivers' work. For example, among other things, Defendants:

     a.     directly employ recruiters, trainers, managers, and dispatchers who are responsible for hiring, training, directing, supervising, and disciplining the drivers;

     b.     require new drivers to participate in an orientation before allowing them to work;

     c.     require new drivers to undergo a one-month "probation" period;

     d.     prohibit drivers from cancelling "loads"[2] after booking the load with their dispatchers;

     e.     own trucks and trailers which they "rent" to drivers who do not own their own equipment;

     f.     require drivers to pay a "security deposit," at times called an "escrow," of about $2,500, which drivers "fund" through payroll deductions;

     g.     set the drivers' rate and manner of compensation, as well as the time periods for drivers' payments;

---

[2] A "load" is a term commonly used in the trucking industry to refer to a freight or cargo shipment.

6

h.      require drivers to download and use certain fleet and paperwork management smartphone applications, such as Samsara and Logix;

i.      require drivers to be available for dispatch at least a certain number of weeks per month;

j.      require drivers to submit paperwork for the loads they transport in specific "trip back" envelopes on a weekly basis (every Thursday);

k.      maintain unilateral discretion to offer or refuse loads to drivers;

l.      require that drivers pay for certain types of damage to Defendants' vehicles, such as tire replacements;

m.      threaten to impose – and do actually impose – monetary charges or "fines" for alleged policy infractions; and

n.      reserve the right to terminate drivers for policy violations, such as "pulling" unauthorized or unreported loads.

26.      Defendants' investment in their business far outstrips the drivers' "investment" in their "business," both in terms of sheer dollar value and in terms of the type of investments made by drivers as compared to Defendants.

27.      The drivers' "investment" in their "business" is generally limited to the costs associated with renting and using their trucks, plus the operating "expenses" that Defendants "pass on" to them (e.g., for insurance, "washouts," and "escort fees").

28.      By comparison, Defendants' investment in their business is monumental, including ownership of more than 300 trucks and facilities in three states (including a 61,800 square foot facility in Illinois), and employment of numerous administrative personnel.

29. The drivers have little opportunity to realize meaningful profits and losses. Their ability to make money (and any losses they incur) are not based on their "managerial skill," but are instead directly correlated to the assignments Defendants are willing to provide them.

30. The drivers' relationship with Defendants is at best impermanent. Plaintiffs, for example, each worked for Defendants for less than a year. On information and belief, that duration is consistent with the duration of other drivers' relationship with Defendants.

31. Defendants' drivers are an integral part of their business because without commercial truck drivers, Defendants would be unable to provide over-the-road freight transportation services for their clients.

32. Defendants' drivers are largely economically dependent upon Defendants. Like Plaintiffs, most personally perform their driving services, which both limits their ability to obtain work elsewhere and means they are generally reliant on Defendants for paid work.

33. Furthermore, Defendants collects thousands of dollars from drivers in "escrow funds," which Defendants only return if certain conditions are met. Drivers are therefore incentivized to keep working for Defendants in order to have their escrow fund returned.

34. Defendants' drivers perform work within Defendants' usual course of business; that is, Defendants provide a service (over-the-road freight transportation) which they could not do without the truck drivers who perform the work associated with that service.

35. Defendants' truck drivers perform their work within Defendants' usual places of business, namely, the commercial motor vehicles and equipment that Defendants' own and maintain, and which they "rent" to the drivers.

36. Defendants' truck drivers do not work in a genuinely independent trade, occupation, profession, or business as commercial truck drivers because, *inter alia*, Defendants:

        a.     recruit individuals with little experience as drivers, whom Defendants "hold out" to clients as "their" drivers;

        b.     mark the tractors and trailers used by the drivers with Defendants' name, logo, and motor carrier identification numbers; and

        c.     maintain exclusive access to their customers and clients, the revenue from whom Defendants use to pay the drivers.

**C.    Defendants' pay practices.**

37.    Defendants pay drivers either a percentage of the gross amount charged to customers or a contracted rate per "loaded" mile, usually in the range of 65 cents; Plaintiffs, for example, were both paid 65 cents per loaded mile.

38.    The drivers' trip assignments and compensation are documented in weekly pay statements called "settlement statements," which also reflect the deductions or "chargebacks" taken by Defendants from the drivers' pay.

39.    GoldCoast and DMG both issue settlement statements to drivers. For example, Mr. Ealom's settlement statements were issued by "GoldCoast Logistics," the trade name used by DMG. Mr. Fernandez's settlement statements were issued by "GoldCoast Carriers."

40.    Defendants take deductions from the drivers' compensation each pay period for a variety of items, including, *inter alia*: tractor and trailer rental; security deposit; occupational accident insurance; deposits for an electronic logging device ("ELD") that Defendants require drivers to use; a "driver legal plan"; washouts; and "escort fees."

41.    As reflected in their settlement statements, Defendants took deductions from Plaintiffs' compensation for security deposits; ELD deposits; occupational accident insurance; and "driver legal plan," among other things.

42.     In addition, and as previously alleged, Defendants take thousands of dollars from drivers' compensation for an "escrow fund." Defendants collected $2,500 each from Mr. Ealom, Mr. Blandin, Mr. Elms, and Mr. Vanegas for escrow funds, for example, and at least $750 from Mr. Fernandez for the same.

43.     Defendants did not return any of the escrow funds it collected from Plaintiffs following the termination of their services.

44.     The deductions taken by Defendants for the items identified above are not required by state or federal law, nor are they for the benefit of the drivers. Moreover, Defendants did not receive proper written authorization from the drivers in order to take these deductions.

45.     The deductions taken by Defendants have at times resulted in drivers receiving less than the FLSA minimum wage for all hours worked because those deductions have reduced the drivers' compensation to less than $7.25 per hour when divided by their hours worked.

46.     For example, during the week of June 20, 2023, Mr. Ealom drove three loads for Defendants and earned total net compensation of -$2,202.08 (i.e., gross compensation of $1,890 less $4,192.98 in deductions taken by Defendants).

47.     Thus, despite working many hours over several days between June 20 and June 26, 2023, Mr. Ealom ultimately received no compensation for the work he performed for Defendants during that pay period.

**COUNT I**
**Fair Labor Standards Act**
**29 U.S.C. § 201,** *et seq.*

48.     Plaintiffs reallege and incorporate here by reference all previous paragraphs in this Complaint. Based on these allegations, Defendants have violated the minimum wage

10

provision of the FLSA, 29 U.S.C. § 206, by failing to pay Plaintiffs, including Mr. Ealom, at least $7.25 per hour for all hours worked.

**COUNT II**
**Illinois Wage Payment and Collection Act**
**820 Ill. Comp. Stat. §§ 115/9 & 115/9.5**

49.     Plaintiffs reallege and incorporate here by reference all previous paragraphs in this Complaint.

50.      The IWPCA, 820 Ill. Comp. Stat. 115/9 and 56 Ill. Admin. Code § 300.870-890, prohibits employers from making unauthorized deductions from employees' wages, deducting a deposit from employees' final compensation, and/or failing to return deposits when the employer's property is returned.

51.     Defendants have violated the IWPCA, 820 Ill. Comp. Stat. § 115/9 and 56 Ill. Admin. Code § 300.870-890 by making unlawful, unauthorized deductions from Plaintiffs' wages and deducting and/or failing to return escrow deposits.

52.     Defendants have violated the IWPCA, 820 Ill. Comp. Stat. 115/9.5 by failing to reimburse Plaintiffs for necessary expenditures and losses required of drivers in the discharge of their employment duties that inure primarily to the benefit of Defendants.

**JURY DEMAND**

53.     Plaintiffs hereby demand a trial by jury on all claims.

**PRAYER FOR RELIEF**

54.     Plaintiff respectfully requests that the Court grant the following relief:

a.      Restitution of all unpaid minimum wages owed under the FLSA;

b.      Restitution of all improper deductions and expenses incurred under the IWPCA;

11

c. Liquidated damages and penalties as provided for in 29 U.S.C. § 216(b), 820 Ill. Comp. Stat. § 105/12(a), and 820 Ill. Comp. Stat. § 115/14(a);

d. Pre- and post-judgment interest;

e. Reasonable attorneys' fees and costs; and

f. Any such other relief as this Court deems proper.

Respectfully submitted,

ANTHONY EALOM, DEXTER BLANDIN,
JOHN ELMS, MIGUEL RODRIGUEZ, and
JAMES VANEGAS,

By their attorneys,


 /s/ Brant Casavant
John Kunze
Martin Stainthorp
Workplace Law Partners, P.C.
111 E. Wacker Drive, Suite 2300
Chicago, IL 60601
Tel: (312) 861-1800
jkunze@fishlawfirm.com
mstainthorp@fishlawfirm.com

Hillary Schwab
  Admitted *pro hac vice*
Brant Casavant
  Admitted *pro hac vice*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel: (617) 607-3260
Fax: (617) 488-2261
hillary@fairworklaw.com
brant@fairworklaw.com

Dated: July 8, 2025.

13