UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
(Eastern Division)

| | |
|---|---|
| ANTHONY EALOM, DEXTER BLANDIN, JOHN ELMS, MIGUEL FERNANDEZ, and JIMMY VANEGAS,<br><br>Plaintiffs,<br><br>v.<br><br>GOLDCOAST CARRIERS INC., DMG CONSULTING & DEVELOPMENT INC., and DRAGOS SPRINCEANA,<br><br>Defendants. | Case No. 1:24-cv-05217 |

**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**
**AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Fed. R. Civ. P. 55(b)(2), Plaintiffs Anthony Ealom, Dexter Blandin, John Elms, Miguel Fernandez, and Jimmy Vanegas respectfully seek for default judgment against Defendants GoldCoast Carriers Inc., DMG Consulting & Development Inc., and Dragos Sprinceana in the total sum of $56,574.55, allocated per plaintiff as follows:

| Plaintiff | Judgment |
|---|---|
| Anthony Ealom | $22,377.63 |
| Dexter Blandin | $6,938.83 |
| John Elms | $8,923.87 |
| Miguel Fernandez | $8,124.61 |
| Jimmy Vanegas | $10,209.61 |

In addition, Plaintiffs request that the Court award them $43,250 in attorneys' fees and $4,879.09 in costs. As the basis for this Motion, Plaintiffs state that default judgment in the

1

requested sums is amply warranted based on allegations in the Complaint and the facts and evidence provided by Plaintiffs in the Declarations that accompany this Motion.

## Legal Standard

Rule 55 governs the entry of default and default judgment. "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). Upon the entry of default, the factual allegations in the complaint relating to liability are deemed admitted, while those concerning the amount of damages "ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). In other words, default conclusively establishes liability, but the plaintiff must still "establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). To obtain a default judgment under Rule 55(b)(2), the moving party must demonstrate: (1) when and against whom the default was entered; (2) the specific pleading to which the default applies; (3) that the defaulting party is neither an infant nor an incompetent person; (4) that the defendant is not engaged in military service such that the Soldiers' and Sailors' Civil Relief Act of 1940 would apply; and (5) that notice was served on the defaulting party if required by Rule 55(b)(2). *Capital Records, Inc. v. Mattingley*, 461 F. Supp. 2d 846, 849 (S.D. Ill. 2006).

## Summary of Relevant Facts

1. **The Parties.**

Plaintiffs are individuals who worked as truck drivers for Defendants during various periods between 2022 and 2024. (Amend. Compl., ECF No. 30, at ¶¶ 2-6). Defendants are a joint enterprise between two corporate entities – GoldCoast Carriers Inc. ("GCC") and DMG Consulting & Development Inc. ("DMG") – owned by an individual named Dragos Sprinceana. *Id.*, ECF No. 30, at ¶¶ 7-9, 14-16, 21. GCC is a motor carrier trucking company. (*Id.*, ECF No. 30, at ¶ 14).

2

DMG is a supply chain management company that operates under the name "GoldCoast Logistics Group." *Id.*, ECF No. 30, at ¶ 15. GCC and DMG were incorporated in Illinois and maintain offices in both Illinois and Florida. (*Id.*, ECF No. 30, at ¶¶ 6-7; Declaration of Brant Casavant ["Casavant Decl."] ["**Exhibit 1**"], ¶ 7). Sprinceana is an adult citizen of Romania and a resident of Florida. (*Id.* [**Ex. 1**]). Defendants have all been subject to several default proceedings in recent years. *See*, *e.g.*, *Inland Lease & Rental, Inc.*, Case No. 1:24-cv-00608 (D.N.M. Mar. 24, 2025) (default judgment against GCC and DMG for $1.29 million); *Logistics Plus Inc. v. DMG Consulting & Development*, Case No. 1:23-cv-00284 (W.D. Penn. Mar. 15, 2024) (default judgment against DMG for $450,384); *Thompson v. DMG Consulting & Development, Inc.*, Case No. 1:23-cv-17183 (N.D. Ill. Aug. 20, 2024) (default judgment against DMG for $58,46).

**2. Procedural Posture.**

Plaintiffs Anthony Ealom and Miguel Fernandez filed this action on June 21, 2024. They asserted two claims: first, that Defendants failed to pay their truck drivers the full federal minimum wage for all hours worked; second, that Defendants took improper and illegal deductions from their truck drivers' pay in violation of the IWPCA. They sought restitution for all unpaid minimum wages and improper deductions, as well as statutory liquidated damages, interest, and their attorneys' fees and costs.

Plaintiffs served GCC and DMG on August 20, 2024, and August 21, 2024, respectively. (*See* Summonses, ECF No. 6, 7). Defendants never filed a response or submitted an appearance. (*See* Status Report, ECF No. 11). On October 6, 2024, the Court entered default against Defendants and instructed Plaintiffs to submit a plan "detailing the procedures necessary to prove up damages and relief[.]" (ECF No. 14). Plaintiffs did so and, with the Court's approval, spent about 10 months

3

attempting – unsuccessfully – to contact Defendants. (*See* Casavant Decl. [**Ex. 1**], ¶¶ 7-8; Status Report, ECF No. 17; Motion to Compel, ECF No. 21; Status Report, ECF No. 24).

In March 2025, Plaintiffs retained a private investigator to locate Sprinceana, the owner and principal of GCC and DMG. (*See* Casavant Decl. [**Ex. 1**], at ¶ 9). The investigator located Sprinceana at a residence in Boca Rotan, Florida, and attempted to serve document subpoenas (among other things, such as a copy of the complaint and the Court's orders in this matter) at that residence but was not successful. (*Id.* [**Ex. 1**]). The investigator concluded that Sprinceana was "clearly avoiding and ignoring [him]," as the residence gave every indication that he was home and simply refused to answer the door. (*Id.* [**Ex. 1**]).

On July 8, 2025, Plaintiffs filed the operative First Amended Complaint. (*See* Amend. Compl., ECF No. 30). The Amended Complaint asserted no new claims; dismissed Plaintiffs' class and collective action allegations; added three new party plaintiffs who had contacted the undersigned counsel during their investigation into Defendants; and added Sprinceana as a party defendant. (*See id.*). Plaintiffs then served Defendants by posting the summons, First Amended Complaint, and copies of the Court's orders at Sprinceana's residence in Boca Raton, Florida. (*See* ECF Nos. 32-36, 39; Casavant Decl. [**Ex. 1**], at ¶ 10). Still, Defendants never responded to that summons, never appeared in this matter, and never contacted Plaintiffs' counsel. (Casavant Decl. [**Ex. 1**], at ¶ 11). Accordingly, on August 28, 2025, the Court entered default against GCC, DMG, and Sprinceana. (*See* ECF No. 39).

## Argument

**1.      Plaintiffs were Defendants' employees.**

Before the Court may consider damages under the FLSA or the IWPCA, it must first determine whether Plaintiffs were employees of Defendants. *See Roman v. Triton Logistics, Inc.*,

4

2025 WL 1134191, at *4 (N.D. Ill. Apr. 16, 2025) ("The threshold question for Roman's [IWPCA] claims is whether he was an independent contractor or an employee, as the [IWPCA] only applies to employees."); *Dalton v. Sweet Honey Tea, Inc.*, 2023 WL 8281524, at *6 (N.D. Ill. Nov. 30, 2023) ("Independent contractors … are not subject to the FLSA's protections."); *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1076 (N.D. Ill. 2014) ("For the defendants to be liable under the FLSA, there must also be an employer-employee relationship."). The facts in the Amended Complaint, accepted as true for purposes of default, amply support that determination. *See American Taxi Dispatch, Inc. v. American Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1009 (N.D. Ill. Oct. 20, 2008) ("in the context of default judgment," the court must accept the allegations in the complaint as true) (collecting cases).

### a. Plaintiffs were Defendants' employees under the FLSA.

To determine whether an individual is an employee under the FLSA requires the Court to "assess the 'economic realities' of the situation[.]" *Super Maid*, 55 F. Supp. 3d at 1076. This "economic realities" test analyzes whether the individual workers are "actually dependent upon the business to which they render service." *Id.*, quoting *Solis v. Int'l Detective & Protective Serv., Ltd.*, 819 F. Supp. 2d 740, 749 (N.D. Ill. 2011). Courts assess economic reality using six factors: "(1) the nature and degree of the alleged employer's control of the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his or her managerial skill; (3) the alleged employee's own investment in equipment or materials required for the work or his or her employment of workers; (4) whether the service rendered requires a special skill;[1] (5) the degree of permanency and duration of the working relationship; and (6) the

---

[1] Plaintiffs' work as commercial truck drivers admittedly required specialized training and licensure; thus, they will not address this factor of the FLSA's economic realities test.

extent to which the service rendered is an 'integral part' of the alleged employer's business." *Id.* (collecting cases). "No single factor is dispositive." *Id.*

Each of these factors evidence Plaintiffs' status as Defendants' employees for purposes of the FLSA. First, Defendants maintained the right to control and direct – and did, in fact, control and direct – the terms and details of Plaintiffs' work. (Amend. Compl., ECF No. 30, at ¶ 25). Among other things, Defendants employed recruiters, trainers, managers, and dispatchers who were responsible for directing Plaintiffs; required Plaintiffs to undergo a "probation" period; prohibited Plaintiffs from cancelling "loads"[2] after booking; owned the trucks and trailers used by Plaintiffs, none of whom own their own trucking equipment; required Plaintiffs to pay "security deposits" into an "escrow" as a condition of their work; set the rate, manner, and timing of Plaintiffs' compensation; required Plaintiffs to use specific fleet management software and smartphone applications; maintained unilateral discretion to offer or refuse loads to Plaintiffs; and reserved the right to terminate Plaintiffs for policy violations, such as "pulling" unauthorized or unreported loads. (*See id.*)

Second, Plaintiffs lacked any opportunity for profit or loss depending on their managerial skills. Their ability to make money was limited to the per-mile rate paid to them by Defendants for the loads they transported. (*Id.*, at ¶ 29). Regardless of how much "managerial skill" they demonstrated, Plaintiffs could only "profit" insofar as they received paid assignments from Defendants – and all those assignments were paid in a manner determined by Defendants, as discussed. *Id.* To the extent Plaintiffs sought to generate "profit," they were, as alleged, economically dependent on Defendants because they personally performed the driving services in

---

[2] A "load" is a term commonly used in the trucking industry to refer to a freight or cargo shipment.

question. In other words, their opportunity for "profit" was limited to the work they were personally able to perform, subject to Defendants' willingness to assign it. (*Id.*, at ¶¶ 29, 32).

Third, Plaintiffs had no investment in the equipment or materials they used while working for Defendants. Defendants owned the trucks that Plaintiffs drove. (*Id.*, at ¶ 35). Plaintiffs paid Defendants for those trucks in the form of deductions taken from their pay for an "escrow" fund maintained by Defendants. (*Id.*, at ¶¶ 33, 35). Defendants also maintained exclusive access to the customers and clients on whose behalf Plaintiffs transported goods, such that Plaintiffs could not establish an independent relationship with those individuals and thereby "expand their business." (*Id.*, at ¶ 36).

Fourth, the relationship between Plaintiffs and Defendants was far from permanent, or even long-running. Each of the five Plaintiffs worked for Defendants for less than a year – indeed, only one (Ealom) worked for Defendants for more than six months. (*Id.*, at ¶¶ 2-6).

Fifth, and finally, the worked performed by Plaintiffs was integral to Defendants' business. Defendants advertise that they are in the business of providing motor carrier services for clients, i.e., transporting goods in commercial trucks driven by individuals like Plaintiffs. (*Id.*, at ¶ 31). Without the services of Plaintiffs, and drivers like Plaintiffs, Defendants simply would not be able to provide the very services that they market to clients, be it transporting freight in interstate commerce or coordinating such transportation between clients and motor carriers. (*Id.*, at ¶¶ 14-15, 31, 35).

Numerous courts have concluded, based on similar facts, that workers are "employees" within the meaning of the FLSA. *See*, *e.g.*, *Super Maid*, 55 F. Supp. 3d at 1076-78; *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 776 (N.D. Ill. 2015) (denying motion to dismiss on basis that plaintiffs had failed to sufficiently alleged facts suggesting that they were employees

under the FLSA); *Balderramo v. Go New York Tours Inc.*, 668 F. Supp. 3d 207, 236-37 (S.D.N.Y. 2023) (summary judgment for plaintiff on claim that defendants jointly employed tour bus drivers under the FLSA); *Flores v. Velocity Express, LLC*, 250 F. Supp. 3d 468, 479 (N.D. Cal. Apr. 24, 2017) (granting summary judgment for plaintiff truck drivers on claim they were employees under FLSA); *Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 745-46 (E.D.N.C. 2017) (plaintiffs presented "substantial evidence" of control that they were defendants' employees); *Ingram v. Passmore*, 175 F. Supp. 3d 1328, 1335-37 (N.D. Ala. 2016) (summary judgment for plaintiff tow truck drivers on employee status under the FLSA). The same result is warranted here: Plaintiffs were Defendants' employees for purposes of the FLSA.

        b.      **Plaintiffs were Defendants' employees under the IWPCA.**

Independent contractor status is an "exemption" to wage liability under the IWPCA, and one as to which Defendants bear the "strict burden of proof." *Brandon v. 3PD, Inc.*, 2014 WL 11348998, at *10 (N.D. Ill. Aug. 6, 2014), *citing* 56 Ill. Admin. Code § 300.460 *and AFM Messenger Serv., Inc. v. Dept. of Emp't Sec.*, 763 N.E.2d 272, 283 (Ill. 2001); *see also Burger v. Olero, Inc.*, 434 F. Supp. 3d 647, 652, 654 (N.D. Ill. 2020) (independent contractor status is an exemption that putative employer must establish to avoid liability under the IWPCA); *Johnson v. Diakon Logistics*, 2025 WL 964939, at *6 (N.D. Ill. Mar. 31, 2025) (same). Under the IWPCA, individuals are deemed employees unless they "(a) [are] free from the control and direction over the performance of their work, both contractually and in reality; (b) perform work either outside the usual course of business or outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for placement of employees; and (c) [are] in an independently established trade, occupation, profession, or business." *Yata v. BDJ Trucking Co.*, No. 17-CV-03503, 2021 WL 1738520, at *4 (N.D. Ill. May 3, 2021), *quoting* 820

8

ILCS 115/2. "The test is conjunctive," meaning that if an employer fails to "satisfy one element [of the test]," its worker "counts as an employee and is protected by the Act." *Prokhorov*, 2023 WL 2711599, at *5. "The burden of proof lies with the employer to show that a worker is an independent contractor." *Id*. Here, Plaintiffs allege they are employees under the IWPCA because Defendants cannot satisfy any of the three elements necessary to have classified them as independent contractors. (Amend. Compl., ECF No. 30, ¶¶ 23-24, 34-36). As to those elements, Defendants have failed to carry any part of their "strict burden of proof." *3PD, Inc.*, 2014 WL 11348998, at *10. Accordingly, Plaintiffs are Defendants' employees for purposes of the IWPCA.

**2.     Plaintiffs are entitled to $1,413.75 for their FLSA claims (Count I).**

The FLSA requires that "[e]very employer shall pay to each of his employees" at least $7.25 per hour worked. 29 U.S.C. § 206(a)(1). "Pursuant to the FLSA, the Department of Labor has issued regulations requiring that minimum wages be paid 'free and clear'[.]" *Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962, 972 (N.D. Ill. 2019). That is:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the [FLSA] will not be met where the employee "kicks-back" directly or indirectly to the employer or another person for the employer's benefit the whole or part of the wage delivered to the employee.

29 C.F.R. § 531.35.

"To state a FLSA minimum wage claim, a plaintiff must plausibly allege at least one workweek for which the compensation she received, divided by the total compensable time, failed to meet the FLSA minimum wage of $7.25 per hour." *Hancox v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2018 WL 3496086, at *3 (N.D. Ill. Jul. 20, 2018). While an employee bringing suit under the FLSA bears the burden of proving he performed work for which he was not properly compensated, *see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), the FLSA

9

provides that every employer subject to the Act "shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him," 29 U.S.C. § 211(c). The governing regulations mandate tracking the hours worked each workday and workweek, as well as total wages paid for each pay period. *See* 29 C.F.R. § 516.2(a).

In order to address the problems created by an employer's failure to maintain accurate time records, the Supreme Court in *Mt. Clemens* recognized that employees suing to recover unpaid minimum wages may establish their hours worked "as a matter of just and reasonable inference." 328 U.S. at 687-88. As the Court explained:

> In such a situation [where an employer fails to maintain accurate time records] we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.*

To the extent Defendants in this case maintained time records of Plaintiffs' work, those records are not available due to Defendants' failure to participate in the judicial process and to respond to Plaintiffs' subpoenas requesting production of such records. Plaintiffs may therefore establish their hours worked using reasonable estimates based on their personal knowledge, supported by the records they have available. *See Mt. Clemens Pottery Co.*, 328 U.S. at 687-88; *Melton v. Tippecanoe County*, 838 F.3d 814, 819 (7th Cir. 2016) ("Relying on the employee's recollection is permissible given the unlikelihood that an employee would keep his own records of his work hours."); *Ingram v. Hagen*, 161 F. Supp. 3d 639, 646 (S.D. Ill. 2015) ("Because hours-related records are absent here, *Mt. Clemens* applies, meaning that proof of damages is relaxed –

10

damages can be 'reconstructed from memory,' 'inferred from the particulars of the jobs,' or 'estimated in other ways.'"), *quoting Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013).

Plaintiffs' evidence supports default judgment in the aggregate sum of $1,413.75 representing minimum wage damages owed to the following Plaintiffs under the FLSA:

| Anthony Ealom | | | |
|---|---|---|---|
| Time Period | Net Pay | Hours | Min. Wage Owed[3] |
| 06/20/2023 - 06/26/2023 | ($2,202.08) | 55.00 | $398.75 |
| 06/27/2023 - 07/03/2023 | ($20.63) | 60.00 | $435.00 |
| | | Total | $833.75 |

| Dexter Blandin | | | |
|---|---|---|---|
| Pay Period | Net Pay | Hours | Min. Wage Owed |
| 10/14/2024 – 10/29/2024 | ($687.07) | 40.00 | $290.00 |
| | | Total | $290.00 |

| Jimmy Vanegas | | | |
|---|---|---|---|
| Pay Period | Net Pay | Hours | Min. Wage Owed |
| 06/17/2024 – 07/01/24 | ($166.23) | 40.00 | $290.00 |
| | | Total | $290.00 |

(*See* Declaration of Anthony Ealom ["Ealom Decl."] ["**Exhibit 2**"], ¶¶ 6-7; Declaration of Dexter Blandin ["Blandin Decl."] ["**Exhibit 3**"], ¶ 8; Declaration of Jimmy Vanegas ["Vanegas Decl."] ["**Exhibit 4**"], ¶ 8). Plaintiffs therefore request that the Court award damages to each of the above Plaintiffs on their claim for failure to pay minimum wages under the FLSA.

---

[3] Calculated by multiplying $7.25 – the minimum wage rate mandated by the FLSA – and hours worked.

3.	**Plaintiffs are entitled $26,979.22 for their IWPCA claims (Count II).**

The IWPCA provides employees with a cause of action against employers for the timely and complete payment of earned wages. 820 ILCS 115/3. The Act defines "wages" as "compensation owed an employee by an employer pursuant to an employment contract or agreement between the parties[.]" 820 ILCS 115/2. "As such, to state a claim under the IWPCA, the drivers are required to demonstrate that they are owed compensation from defendants pursuant to an employment agreement." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (collecting cases). Additionally, the IWPCA prohibits employers from taking deductions from employees' wages unless the deductions are "(1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; [or] (4) made with the express written consent of the employee, given freely at the time the deduction is made." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016), *quoting* 820 ILCS § 115/9.

The IWPCA requires that employers reimburse employees for "all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer." 820 ILCS § 115/9.5(a). A "necessary expenditure" is one that is "required of the employee in the discharge of employment duties" and "that inure[s] to the primary benefit of the employer." *Id.* Read together, these provisions prohibit employers from requiring employees to bear the burden of an employer's cost of doing business. *See, e.g.*, *Prokhorov v. IIK Transp., Inc.*, 2023 WL 2711599, at *7 (N.D. Ill. Mar. 30, 2023) ("If plaintiff is right, and the drivers were misclassified, then deductions were barred and reimbursements were required, with a few exceptions."). These requirements apply even if specified in a written agreement pertaining to employees' compensation: an employer's "duty to make only proper

12

deductions from [] drivers' wages flows from the [IWCPA], not [their] contracts." *Johnson v. Daikon Logistics, Inc.*, 44 F.4th 1048, 1053 (7th Cir. 2022).

Here, Defendants paid Plaintiffs an agreed-upon sum per mile driven which was denoted on their settlement statements.[4] Defendants took numerous deductions from that compensation, including deductions for a "security deposit" or "escrow fund"; occupational accident insurance; drug tests; vehicle maintenance, such as tire replacement; the use of an electronic logging device so that Defendants could track their work; unspecified "safety services"; and for unexplained "safety violations."[5] None of these deductions are required by law. *See Niiranen v. Carrier One, Inc.*, 2025 WL 885701, at *19 n.12 (N.D. Ill. Mar. 22, 2025) (rejecting argument that similar deductions were required by federal motor carrier regulations); *Piquion v. Amerifreight Sys., LLC*, 2023 WL 8113379, at *19 n.13 (N.D. Ill. Nov. 22, 2023) (same). Nor were they for Plaintiffs' benefit, made in connection with a valid wage assignment (e.g., child support), or done with Plaintiffs' express written consent freely given at the time the deductions were made.[6] Accordingly, Defendants' deductions from Plaintiffs' wages violate the IWPCA.[7]

---

[4] (*See* Amend. Compl., ECF No. 30, at ¶ 37; Ealom Decl. [**Ex. 2**], ¶ 5 & Ex. A; Blandin Decl. [**Ex. 3**], ¶ 5 & Ex. A; Vanegas Decl. [**Ex. 4**], ¶ 5 & Ex. A; Declaration of Miguel Fernandez Decl. ["Fernandez Decl."] ["**Exhibit 5**"], ¶ 10 & Ex. A).

[5] (*See* Amend. Compl., ECF No. 30, at ¶¶ 40-43; Ealom Decl. [**Ex. 2**] at ¶¶ 8-9; Blandin Decl. [**Ex. 3**], ¶ 6; Vanegas Decl. [**Ex. 4**], ¶ 6; Fernandez Decl. [**Ex. 5**] at ¶¶ 6-9; Declaration of John Elms ["Elms Decl."] ["**Exhibit 6**"], ¶ 6).

[6] (*See* Ealom Decl. [**Ex. 2**] at ¶ 10; Blandin Decl. [**Ex. 3**], ¶¶ 7, 9; Vanegas Decl. [**Ex. 4**], ¶¶ 7, 9; Fernandez Decl. [**Ex. 5**] at ¶ 13; Elms Decl. [**Ex. 6**], ¶¶ 7, 9).

[7] *See, e.g., Ury v. Fruit Belt Serv. Co.*, 440 N.E.2d 165, 167 (Ill. App. 1982) ("defendant's practice of withholding money from plaintiff's salary [for a reserve account to protect the employer from uncollectible debt] was illegal"); *Daikon Logistics*, 2025 WL 964939, at *12 (deductions for customer damage claims and failure to follow delivery instructions, as well as deductions for workers' compensation insurance, violate IWPCA); *Yata v. BDJ Trucking Co.*, 2021 WL 1738520, at *5-*6 (N.D. Ill. May 3, 2021) (unreturned escrow funded through wage deductions paid by truck drivers violated IWPCA); *Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*, 2021 WL 1212796, at *2, *5 (N.D. Ill. Mar. 31, 2021) (denying motion to dismiss claim that $15 to $50 "administrative charges" taken from technicians' paychecks, as to which "Defendants have yet to argue … were in any way consensual," violated IWCPA); *Balderrama-Baca v. Clarence Davids & Co.*, 2019 WL 1057193, at *5-*6 (N.D. Ill. Mar. 6, 2019)

13

Plaintiffs' records and testimony establish that the value of their unpaid wages and improper deductions as follows:

| Plaintiff | Total IWPCA Damages |
|---|---|
| Anthony Ealom | $8,812.81 |
| Miguel Fernandez | $3,932.84 |
| Dexter Blandin | $4,078.60 |
| John Elms | $4,595.11 |
| Jimmy Vanegas | $5,559.86 |

(*See* Ealom Decl. [**Ex. 2**] at ¶ 10; Blandin Decl. [**Ex. 3**], ¶ 9; Fernandez Decl. [**Ex. 4**] at ¶ 13; Vanegas Decl. [**Ex. 5**], ¶ 9; Elms Decl. [**Ex. 6**], ¶ 9). Plaintiffs therefore request that the Court enter judgment against Defendants in the above sums.

**4.    Plaintiffs Are entitled to FLSA liquidated and IWPCA statutory damages.**

"Any employer who violates the [FLSA's minimum wage provisions] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages … and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages are "mandatory [for FLSA violations] unless the court finds that the employer was acting in good faith and reasonably believed that its conduct was consistent with the law." *Shea v. Galaxie Lumber & Constr. Co., Ltd.*, 152 F.3d 729, 733 (7th Cir. 1998).

"To establish good faith and reasonableness, an employer must demonstrate that it took affirmative steps to ascertain FLSA requirements; showing that the violations were not willful is not enough." *Walsh v. Dayemi Organization, Inc.*, 608 F. Supp. 3d 715, 724 (S.D. Ill. 2022). "The employer bears the burden of proving both good faith and reasonable belief." *Uphoff v. Elegant*

---

(deductions for employer-mandated uniforms illegal under IWPCA where Illinois wage regulations mandate that employers bear the cost of any acquiring and maintaining employee uniforms).

14

*Bath, Ltd.*, 176 F.3d 399, 405 (7th Cir. 1999). "Although in the final analysis we review a district court's decision on liquidated damages for abuse of discretion, that discretion must be exercised consistently with the strong presumption under the statute in favor of doubling." *Shea v. Galaxie Lumber & Construction Co.*, 152 F.3d 729, 733 (7th Cir. 1998). "Doubling is the norm, not the exception." *Uphoff*, 176 F.3d at 405.

Like the FLSA, the IWPCA provides that any "employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover … the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." 820 ILCS 115/14(a). "Illinois has … decided to impose [these] steep penalties 'over and above the damages, including liquidated damages, that are available under the FLSA.'" *Meadows v. NCR Corp.*, 2021 WL 12284732, at *2 (N.D. Ill. Jul. 9, 2021), quoting *Calderon v. J. Younes Const. LLC*, 2013 WL 3199985, at *8 (N.D. Ill. June 23, 2013).

Here, Plaintiffs seek liquidated damages under the FLSA in the aggregate amount of $1,413.75. That sum represents double the damages Plaintiffs calculate they are owed under the FLSA for Defendants' failure to pay the federal minimum wage, allocated per Plaintiff as follows:

| Plaintiff | FLSA Liquidated |
|---|---|
| Anthony Ealom | $833.75 |
| Dexter Blandin | $290.00 |
| Jimmy Vanegas | $290.00 |

In addition, Plaintiffs seek statutory damages under the IWPCA, calculated at the statutory rate of 5 percent per month from the approximate end of the pay periods in which the deductions or unpaid wages were incurred. These total sums are divided, per Plaintiff, as follows:

15

| Plaintiff | IWPCA Statutory |
|---|---|
| Anthony Ealom | $11,897.29 |
| Dexter Blandin | $2,280.23 |
| John Elms | $4,069.75 |
| Miguel Fernandez | $4,191.77 |
| Jimmy Vanegas | $4,328.76 |

**5.      Plaintiffs are entitled to their attorneys' fees and costs.**

An award of attorneys' fees and costs to a prevailing plaintiff is mandatory under the FLSA. 29 U.S.C. § 216(b). Similarly, the IWPCA provides that "[a]ny employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover ... costs and all reasonable attorney's fees." 820 ILCS 115/14(a). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 422 (1983). "Known as the lodestar method, the party seeking fees bears the burden of proving the reasonableness of the hours worked and rates claimed." *Lin v. Zhang*, 2023 WL 7157567, at *2 (C.D. Ill. Oct. 31, 2023). "The court may adjust the award based on various factors, including 'the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation.'" *Id.*, quoting *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). "If the court decides to reduce the rate or hours to make them reasonable, the court must provide a 'concise but clear explanation of its reasons' for any reduction." *Id.*, quoting *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999).

Plaintiffs here seek to recover their counsel's fees at hourly rates ranging from $250 to $650. (*See* Casavant Decl. [**Ex. 1**], ¶ 14; Declaration of Martin Stainthorp ["Stainthorp Decl."] ["**Exhibit 7**"], ¶¶ 4-6). These rates are reasonable given counsel's substantial experience litigating wage matters such as this one. (*See* Casavant Decl. [**Ex. 1**], at ¶ 14; Stainthorp Decl. [**Ex. 7**], ¶¶ 4-

16

6). They are also commensurate with hourly rates approved by courts with respect to attorneys working in this jurisdiction.[8] Applying those rates to the time recorded by Plaintiffs' counsel yields the following:

| Attorney/Professional | Hours | Rate | Total |
|---|---|---|---|
| Brant Casavant | 47.60 | $550 | $26,180 |
| David Fish | 1.10 | $650 | $715 |
| John Kunze | 10.30 | $450 | $4,635 |
| Martin Stainthorp | 28.70 | $350 | $10,045 |
| Paralegal/Administrative Staff | 6.70 | $250 | $1,670 |
| | | **Total** | **$43,250** |

Finally, Plaintiffs seek to recover the costs incurred by their counsel prosecuting this matter. Those costs amount to $4,879.09, comprised of $4,657.50 in costs incurred by Fair Work P.C. and $221.59 in costs incurred by Workplace Law Partners, P.C. (*See* Casavant Decl. [**Ex. 1**], ¶ 12; Stainthorp Decl. [**Ex. 7**], ¶ 8).

## Conclusion

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant this Motion, enter default judgment against Defendants, and award Plaintiffs damages in the following sums:

---

[8] *See, e.g. Weyker v. Quiles*, No. 14-CV-782-PP, 2015 WL 5177970, at *2 (E.D. Wis. Sept. 4, 2015) (awarding Chicago rates of $550 per hour for lead counsel with 25 years of experience and $375 for counsel with nine years of experience); *Sanchez v. Roka Akor Chicago LLC*, No. 14 C 4645, 2017 WL 1425837, * 5 (N.D. Ill. Apr. 20, 2017) (approving rates ranging from $650 for senior partners to $400 for associate attorneys in FLSA settlement); *Fox ex rel. Fox v. Barnes*, No. 09 C 5453, 2013 WL 4401802, at *3 (N.D. Ill. Aug. 15, 2013) ($505 per hour); *Garcia v. R.J.B. Properties, Inc.*, 756 F. Supp. 2d 911, 916-20 (N.D. Ill. 2010) ($400 per hour); *Decker v. Transworld Sys., Inc.*, No. 09 C 50073, 2009 WL 2916819, *5-6 (N.D. Ill. Sept. 1, 2009) ($394 per hour); *Six Star Holdings, LLC v. City of Milwaukee*, No. 10-C-0893, 2015 WL 5821441, at *4 (E.D. Wis. Oct. 5, 2015) (approving rates for Milwaukee counsel of $575 for lead counsel, $385 for a "trial consultant" attorney who was no longer licensed to practice law, $350 for an associate attorney, and $150 for paralegals).

| Plaintiff | Judgment |
|---|---|
| Anthony Ealom | $22,377.60 |
| Dexter Blandin | $6,793.07 |
| John Elms | $8,148.35 |
| Miguel Fernandez | $8,786.88 |
| Jimmy Vanegas | $10,468.62 |

In addition, Plaintiffs request that the Court award them attorneys' fees totaling $43,250 and costs totaling $4,879.09. A proposed order is included with this Motion as **Exhibit 8**.

Dated: October 14, 2025

Respectfully submitted,

ANTHONY EALOM, DEXTER BLANDIN, JOHN ELMS, MIGUEL FERNANDEZ, and JIMMY VANEGAS,

 /s/ Martin Stainthorp
Martin Stainthorp
John Kunze
David Fish
Workplace Law Partners, P.C.
155 N. Michigan Ave., STE 719
Chicago, IL 60601
Tel: (312) 861-1800
jkunze@fishlawfirm.com
mstainthorp@fishlawfirm.com
dfish@fishlawfirm.com

 /s/ Brant Casavant
Brant Casavant
 Admitted *pro hac vice*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel: (617) 607-3260
Fax: (617) 488-2261
brant@fairworklaw.com

*Attorneys for Plaintiffs.*

**Certificate of Service**

I certify that on October 14, 2025, I caused a true copy of this document to be served using the Court's ECF/NEF system on all registered participants, and that I served a copy of this document by mail on last known address of the defendants in this matter.

    /s/ Martin Stainthorp
Martin Stainthorp